IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

v.  Criminal No.  1:21-CR-45
    (Judge Kleeh)

WILLIAM LEWIS,

       Defendant.

## GOVERNMENT'S OPPOSITION TO POST-TRIAL MOTIONS

Now comes the United States of America and William Ihlenfeld, United States Attorney for the Northern District of West Virginia, by Andrew R. Cogar, Assistant United States Attorney, who opposes defendant William Lewis' motion for judgment of acquittal and alternative motion for new trial. As explained below, the Court should deny the motion because the trial evidence amply supports the verdict, the Court correctly instructed the jury, and the counts of conviction are factually distinct.

### I.  BACKGROUND

The indictment in this case charged Lewis with making three false statements to federal agents during an August 12, 2020 interview regarding alleged correctional officer abuse at USP Hazelton. On September 13, 2022, after a two-day trial, the jury returned guilty verdicts on Counts Two and Three of the indictment. Count Two alleged that Lewis falsely denied that any staff in the Special Housing Unit ("SHU") at USP Hazelton had used excessive force against inmates, and Count Three alleged that Lewis falsely claimed that he never told anyone he had "seen [SHU] officers going too far."

At trial, substantial portions of Lewis' recorded interview were admitted, including the false statements charged in the indictment. Former SIS Lieutenant Nicholas Barrientos testified that, on July 28, 2020, he had a conversation at USP Hazelton with Lewis, who advised that SHU correctional officers had assaulted inmates and expressed concern that officers would "eventually kill an inmate." According to Barrientos, Lewis specifically identified at least two correctional officers involved in the misconduct and at least one location where inmate assaults occurred. Barrientos also testified that, at the time, Lewis was a trusted colleague who had assisted with other investigations.

Additional trial evidence reflected that, during his August 12, 2020 interview, Lewis made material misrepresentations about other matters relevant to the investigation. Lewis denied communicating with officers outside of the prison; however, phone records and testimony by Lewis' ex-wife demonstrated that, in the two weeks before the interview, Lewis called and messaged several officers dozens of times. Lewis also denied that he had any friends who were correctional officers, but the Government admitted evidence directly contradicting that claim, including contemporaneous photographs of Lewis with fellow correctional officers at a camping trip and Fourth of July party.

On October 21, 2022, Lewis filed a motion for judgment of acquittal and alternative motion for a new trial. He contends that (1) the evidence is insufficient to support the verdicts because the interview questions were fatally ambiguous, (2) the Court incorrectly responded to the jury's question about its consideration of evidence "outside the evidence that the indictment alleges," and (3) the counts of conviction are multiplicitous.

## II. STANDARD OF LAW

For a Rule 29 motion for acquittal, a defendant bears "an imposing burden to successfully challenge the sufficiency of the evidence." United States v. Martin, 523 F.3d 281, 288 (4th Cir. 2008) (citation omitted). "[T]he jury verdict must be upheld if there exists substantial evidence, including circumstantial and direct evidence, to support the verdict, viewing the evidence in the light most favorable to the government." United States v. Stewart, 256 F.3d 231, 249 (4th Cir. 2001) (citations omitted) (emphasis added). "In applying this standard of review, [the Court] must remain cognizant of the fact that '[t]he jury, not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented, and if the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe.'" United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (quoting United States v. Murphy, 35 F.3d 143, 148 (4th Cir. 1994)).

Rule 33 of the Federal Rules of Criminal Procedure otherwise permits the Court to vacate a criminal conviction and "grant a new trial if the interest of justice so requires." However, "a trial court should exercise its discretion to award a new trial sparingly, and a jury verdict is not to be overturned except in the rare circumstance when the evidence weighs heavily against it." United States v. Smith, 451 F.3d 209, 217 (4th Cir. 2006) (quotation omitted).

## III. ARGUMENT

**A.  Substantial evidence supported the false statement convictions by Lewis, and neither of the false statement convictions encompassed answers to any ambiguous questions.**

Lewis first contends that his convictions were not supported by substantial evidence, summarily claiming that his "recorded interview provides no unambiguous questions upon which the prosecution of a [false statement charge] can be supported." Dkt. # 84, at 5.  As Lewis correctly

observes, "[t]he answer to a fundamentally ambiguous question may not, as a matter of law, form the basis for a false statement." United States v. Sarwari, 669 F.3d 401, 407 (4th Cir. 2012). "A question is fundamentally ambiguous only when it 'is not a phrase with a meaning about which men of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony.'" Id. (quoting United States v. Lighte, 782 F.2d 367, 375 (2d Cir. 1985) (internal quotation and citation omitted).

Here, none of the material questions posed to Lewis can be reasonably construed as ambiguous, much less "fundamentally ambiguous." With respect to Count Two, the jury heard the following dialogue from Lewis' recorded interview:

*Special Agent ("SA") Simone*: Have you witnessed any type of prisoner abuse?

*Lewis*: No.

*SA Simone*: Any physical threats?

*Lewis*: No

*SA Simone*: Any actual inmates being assaulted while they're restrained?

*Lewis*: No.

Gov't Exh. 2 (clip 1); Dkt. # 84-1, at 7.

*SA Ortiz*: [T]ell me about what's going on in the SHU.

*Lewis*: There's nothing going on outside the realm of normal stuff.

*SA Ortiz*: Okay.

*Lewis*: I go there, show up –

*SA Simone*: So you're basically saying there's no excessive force?

*Lewis*: No.

| | | |
|---|---|---|
| *SA Simone*: | Prisoners are not getting beat? | |
| *Lewis*: | No. | |
| *SA Simone*: | Prisoners are not being verbally threatened? | |
| *Lewis*: | No. | |
| *SA Simone*: | You have never seen that? | |
| *Lewis*: | No. | |

Gov't Exh. 2 (clip 2); Dkt. # 84-1, at 16-17.

With respect to Count Three, the following dialogue was admitted into evidence:

| | | |
|---|---|---|
| *SA Simone*: | Have you witnessed any other correctional officers that you work with involved in use of force—hitting a prisoner while they're restrained? | |
| *Lewis*: | No. | |
| *SA Simone*: | You have never seen that your entire time here. | |
| *Lewis*: | No. | |
| *SA Ortiz*: | So if we have someone who said that, in fact, you've had that conversation with them, they're lying? | |
| *SA Simone*: | Or video. | |
| *Lewis*: | I can only speak for myself. | |
| *SA Ortiz*: | That wasn't my question.  My question was if I have someone who is telling me that you've told them that you've seen officers going too far. | |
| *Lewis*: | I've never told nobody that. | |

Gov't Exh. 2 (clip 3); Dkt. # 84-1, at 32-33.

Lewis does not—and cannot—explain how the relevant interview questions were incomprehensible to him.  See Sarwari, 669 F.3d at 407 ("A court cannot 'dismiss a charge of perjury when it is entirely reasonable to expect a defendant to have understood the terms used in

the questions.'") (citations omitted). At the time of the interview, Lewis was an experienced correctional officer, and he never displayed any lack of understanding about the questions posed to him. Moreover, in the lines of questioning quoted above, the interviewing agents did not use any confusing or technical jargon. Therefore, in light of Lewis' unequivocal answers to straightforward questions regarding matters within his experience and knowledge, his "fundamental ambiguity" claim is completely meritless.

**B.      The Court correctly permitted the jury to consider contextual evidence to render its verdict.**

After jury deliberations began, the jury submitted a note to the Court with the following inquiry:

> For each indictment, can evidence be considered to determine guilt/innocence outside the evidence that the indictment alleges. Ex: "The indictment alleges the statement and representation were false because..."
>
> Can reasoning outside that presented be considered in the determination?

Without a timely objection from the defense, the Court answered the question "yes" for the jury.

The Court's response to the jury note accurately reflected the law by allowing the jury to consider the full context of the alleged false statements. When false statements are charged, "context is a proper consideration for the jury." United States v. Schafrick, 871 F.2d 300, 304-05 (2d Cir. 1989); see also Lighte, 782 F.2d at 373 (holding that, for a perjury charge, "[t]he jury may also consider extrinsic evidence that demonstrates how a declarant interpreted a question"); United States v. Manapat, 928 F.2d 1097, 1101 (11th Cir. 1991) ("Several courts have stated that '[a] defense to a charge of perjury may not be established by isolating a statement from context, giving it in this manner a meaning entirely different from that which it has when the testimony is considered as a whole.'") (quotations omitted). More generally, the jury instructions do not require

the jury to exclusively consider only a subset of evidence for any individual false statement charge, and Lewis never proposed any instructions suggesting otherwise.

Lewis nonetheless argues that, for false statement charges, the Government "must prove the [disputed] statement is untruthful for the reason alleged in the indictment." Dkt. # 84, at 6 (citing <u>United States v. Mallory</u>, 343 F. Supp. 3d 570 (E.D. Va. 2018) and <u>United States v. Yiheng Zhang</u>, 2019 WL 2779107 (W.D. Va. July 1, 2019)). Insofar as Lewis accurately states the law (the Fourth Circuit has not spoken to the issue), he fails to demonstrate that it irreconcilably conflicts with the Court's response to the jury note. To the contrary, as explained above, the Court's response correctly permitted the jury to evaluate the context of the false statements.

**C.      The defendant's multiplicity challenge is untimely and otherwise unavailing because the counts of conviction identify unique and separate false statements.**

For the first time, Lewis argues that Counts Two and Three are multiplicitous. "Multiplicity is the charging of a single offense in several counts. The Fifth Amendment's Double Jeopardy Clause prohibits multiplicitous indictments for crimes that 'are in law and in fact the same offense.'" <u>United States v. Fall</u>, 955 F.3d 363, 373 (4th Cir.), <u>cert. denied,</u> 208 L. Ed. 2d 59, 141 S. Ct. 310 (2020) (internal citations and quotations omitted). Under Rule 12(b)(3)(B)(ii) of the Federal Rules of Criminal Procedure, however, a multiplicity defense must be raised <u>before trial</u> "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." If a defendant fails to raise a multiplicity defense before trial, the defense is waived. <u>United States v. Grayson Enterprises, Inc.</u>, 950 F.3d 386, 403 (7th Cir. 2020).

Here, Lewis never raised a multiplicity defense before trial, and he fails to offer any justification for its post-trial assertion. As such, the Court should reject the claim as untimely.

The disputed charges otherwise do not violate the prohibition of multiplicity. False statement charges are only multiplicitous if a "declarant was asked the same question and gave the

same answer." United States v. Jameson, 972 F.2d 343, *10 (4th Cir. 1992) (unpublished) (quoting United States v. Salas-Comacho, 859 F.2d 788, 791 (9th Cir. 1988)).  In this case, as illustrated by the dialogue quoted above, Counts Two and Three charge unique false statements.  Count Two focuses on Lewis' denial that any SHU officer used excessive force against inmates, and Count Three exclusively relates to Lewis' denial that he told anyone about seeing SHU officers "going too far."  Both counts, therefore, properly charge different false statements given in response to different questions.

## IV.  CONCLUSION

For the reasons explained above, the Court should deny Lewis' post-trial motions and proceed to sentencing in the matter.

Respectfully submitted:

UNITED STATES OF AMERICA
WILLIAM IHLENFELD
United States Attorney

/s/ Andrew R. Cogar
Assistant United States Attorney
320 W. Pike St., Suite 300
Clarksburg, WV 26301
Ph: (304) 623-7030; Fax: (304) 623-7031

## CERTIFICATE OF SERVICE

I, Andrew R. Cogar, Assistant United States Attorney for the Northern District of West Virginia, hereby certify that on November 16, 2022, I electronically filed the foregoing **GOVERNMENT'S OPPOSITION TO POST-TRIAL MOTIONS**, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all participants registered in CM/ECF in the above-referenced matter.

Respectfully submitted,
WILLIAM IHLENFELD
UNITED STATES ATTORNEY

By: /s/ Andrew R. Cogar
Assistant United States Attorney