IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

  v.                                            CRIMINAL NO. 1:21-CR-45
                                                                 (KLEEH)

**WILLIAM LEWIS,**

      **Defendant.**

**MEMORANDUM OPINION AND ORDER
DENYING POST-TRIAL MOTIONS [ECF NO. 84]**

Pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure, Defendant has moved for a judgment of acquittal or, in the alternative, a new trial [ECF No. 84]. The Government filed a response in opposition [ECF No. 90]. For the reasons discussed herein, Defendant's post-trial motions are **DENIED**.

## I.    PROCEDURAL HISTORY

On September 8, 2021, the grand jury returned an Indictment, charging Defendant William Lewis ("Defendant") with three separate counts of False Statement to a Federal Agent, each in violation of 18 U.S.C. § 1001(a)(2). Following a two-day trial, the jury found Defendant not guilty as to Count One but guilty as to Counts Two and Three. On September 13, 2022, prior to the jury's beginning its deliberations and at the close of the Government's case-in-chief, Defendant, by counsel, moved for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure.

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 84]**

Defendant filed the pending post-trial motions on October 21, 2022, and the Government filed its response on November 16, 2022.

## II.   BACKGROUND

The allegations in the Indictment stem from a conversation between Defendant, a correctional officer at the United States Penitentiary at Hazelton ("USP Hazelton"), and Nicholas Barrientos ("Barrientos"), who worked in Special Investigative Services at USP Hazelton.  Barrientos and Defendant spoke on July 28, 2020, in the recreation yard at USP Hazelton.  During the conversation, Defendant raised concerns about inmate safety in the Special Housing Unit ("SHU").

Barrientos testified during trial that Defendant told him that one SHU officer was "taking things too far" and that the "way [he] was doing things was going to lead to him being assaulted." Trial Transcript, Sept. 12, at 75:15-21.  Barrientos also said that Defendant "talked about the way that the staff was communicating with inmates, verbal abuse would likely get somebody assaulted also."  Id. at 75:22-76:3.  When Barrientos was asked whether Defendant mentioned anything "particularly concerning about inmate safety," Barrientos testified, "Yeah. . . . You know, just kind of bringing to the attention that, hey, listen, something could get really serious down here, and, you know, if you can do away with this, it could potentially lead to an inmate

getting killed." Id. at 76:4-12. Barrientos also testified that Defendant told him that the SHU Lieutenant "was involved in doing the same thing that the staff were doing." Id. at 76:13-21. Barrientos drafted a memorandum of the conversation, which was admitted into evidence as Government's Exhibit 4. The memorandum states that Defendant voiced concerns that staff would eventually "kill an inmate."

On August 12, 2022, after Barrientos had prepared his memorandum, federal agents interviewed Defendant. The Indictment alleged that certain statements made by Defendant during the interview were false, in light of what Defendant had previously said to Barrientos.

### III. APPLICABLE LAW

Rule 29 of the Federal Rules of Criminal Procedure provides that "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." A defendant who challenges the sufficiency of the evidence under Rule 29 faces an "imposing burden." United States v. Martin, 523 F.3d 281, 288 (4th Cir. 2008) (citing United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997)). He must establish that "the record demonstrates a lack of evidence from which a jury could find guilt beyond a

**MEMORANDUM OPINION AND ORDER
DENYING POST-TRIAL MOTIONS [ECF NO. 84]**

reasonable doubt." Id. at 287-88 (citing United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)). When reviewing the sufficiency of the evidence supporting a criminal conviction, courts are "limited to considering whether there is substantial evidence, taking the view most favorable to the Government, to support it." Beidler, 110 F.3d at 1067 (citation and quotation marks omitted).

The court must uphold the jury's verdict if, when viewed in the light most favorable to the government, there is sufficient evidence from which "any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997). It is the jury, and not the court, who "weighs the credibility of the evidence and resolves any conflicts in the evidence presented." Beidler, 110 F.3d at 1067 (citation omitted). Reversal of a jury's verdict of guilty is reserved for cases "where the prosecution's failure is clear." Burks v. United States, 437 U.S. 1, 17 (1978).

Rule 33(a) of the Federal Rules of Criminal Procedure permits the Court to vacate a criminal conviction and "grant a new trial if the interest of justice so requires." However, "a trial court should exercise its discretion to award a new trial sparingly, and a jury verdict is not to be overturned except in the rare circumstance when the evidence weighs heavily against it." United

States v. Smith, 451 F.3d 209, 217 (4th Cir. 2006) (citation and quotation marks omitted).

### IV.   DISCUSSION

Defendant first argues that there was insufficient evidence to support convictions for Counts Two and Three. He next argues that the Court's response to the jury's first question was an incorrect statement of law, mandating a judgment of acquittal. Third and finally, he argues that the counts in the Indictment are multiplicitous. The Court disagrees and will discuss each argument in turn.

   1. **Sufficient evidence supported convictions for Counts Two and Three, and neither of the convictions encompassed answers to ambiguous questions.**

Defendant argues that there was insufficient evidence to convict Defendant of Counts Two and Three and that the questions posed to Defendant by the federal agents were ambiguous. Section 1001(a)(2) of Title 18 of the United States Code provides that "whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully . . . makes any materially false, fictitious, or fraudulent statement or representation" shall be guilty of an offense against the United States. To sustain its burden of proof for the crime of making a false statement to a federal agent as charged in Counts Two and Three of the Indictment,

the Government needed to prove the following three elements beyond a reasonable doubt for each count:

> (1) The defendant made a false statement in a matter involving a federal governmental agency;
>
> (2) The defendant acted knowingly and willfully; and
>
> (3) The false statement was material to a matter within the jurisdiction of the agency.

"The answer to a fundamentally ambiguous question may not, as a matter of law, form the basis for a false statement." United States v. Sarwari, 669 F.3d 401, 407 (4th Cir. 2012). "A question is fundamentally ambiguous only when it 'is not a phrase with a meaning about which men of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony.'" Id. (citation omitted).

### Count Two

Count Two charged that Defendant made a false statement when he denied that any staff in the SHU at USP Hazelton had used excessive force against inmates. The jury listened to the following portions of the interview with respect to Count Two:

> MR. SIMONE: Have you witnessed any type of prisoner abuse.
>
> MR. LEWIS: No.

>      MR. SIMONE: Any physical threats?
>
>      MR. LEWIS: No.
>
>      MR. SIMONE: Any actual inmates being assaulted while they're restrained.
>
>      MR. LEWIS: No.

Gov't Trial Exh. 2, ECF No. 84-1, at 7:9-16.

>      MR. ORTIZ: So tell me about the culture tell me about what's going on in the SHU.
>
>      MR. LEWIS: There's nothing going on outside the realm of normal stuff.
>
>      MR. ORTIZ: Okay.
>
>      MR. LEWIS: I go there show up –
>
>      MR. SIMONE: So you're basically saying there's no excessive force?
>
>      MR. LEWIS: No.
>
>      MR. SIMONE: Prisoners are not getting beat?
>
>      MR. LEWIS: No.
>
>      MR. SIMONE: Prisoners are not being verbally threatened.
>
>      MR. LEWIS: No.
>
>      MR. SIMONE: Verbally abused.
>
>      MR. LEWIS: No.
>
>      MR. SIMONE: You have never seen that.
>
>      MR. LEWIS: No.

Id. at 16:19-17:12.

When compared to Barrientos's testimony and memorandum, the Government presented sufficient evidence to show that Defendant lied to federal agents when he denied that any staff at Hazelton had used excessive force against inmates.

### Count Three

Count Three charged that Defendant made a false statement when he stated that he "never told anybody" that he had "seen [SHU] officers going too far." The jury listened to the following portions of the interview with respect to Count Three:

> MR. SIMONE: Have you witnessed any other correctional officers that you work with involved in use of force. Hitting a prisoner while they're restrained.
>
> MR. LEWIS: No.
>
> MR. SIMONE: You have never seen that your entire time here.
>
> MR. LEWIS: No.
>
> MR. ORTIZ: So if we have someone who said that they in fact. You've had that conversation with them, they're lying?
>
> MR. SIMONE: Or video.
>
> MR. LEWIS: I can only speak for myself.
>
> MR. ORTIZ: That wasn't my question. My question was if I have someone who is telling me that you've told them that you've seen officers going too far.
>
> MR. LEWIS: I've never told nobody that.

Id. at 32:20-33:12.

Again, when compared to Barrientos's testimony and memorandum, the Government presented sufficient evidence to show that Defendant lied to federal agents when he stated that he never told anybody that he had seen SHU officers going too far.

### Alleged Ambiguity

The Court agrees with the Government that Defendant has not explained how the relevant interview questions were incomprehensible to him. The questions posed had meanings "about which men of ordinary intellect could agree," and they could be understood by both questioner and answerer without further definition. At the time of the interview, Defendant, an experienced correctional officer, did not express any misunderstanding. The interviewing agents did not use complicated or confusing jargon. Therefore, the Court finds that the questions were unambiguous and that there was sufficient evidence on the record to support convictions for Counts Two and Three.

2. **The Court's answer to the jury's question was a correct statement of the law, and Defendant's challenge is untimely.**

Defendant argues that the Court incorrectly answered the jury's first question, mandating a judgment of acquittal. At 3:59 p.m. on September 13, 2022, while deliberating, the jury sent the following note to the Court:

> For each indictment, can evidence be considered to determine guilt/innocence outside the evidence that the indictment alleges? Ex: "the indictment alleges the statement and representation were false because . . ."
>
> Can reasoning outside that presented be considered in the determination?

See ECF No. 81. The Court read the note aloud to counsel outside of the jury's presence and then said to counsel,

> Counsel, my inclination is to have the jury come back in and explain to them that they can consider all the evidence presented to them in any way they believe appropriate consistent with this Court's instructions and that includes considering evidence admitted for a limited purpose only consistent with those limiting instructions.

Trial Transcript, Sept. 13, at 433:5–12.

Both parties stated that they had no objection to that plan. The Court brought the jury back into the courtroom and instructed them as follows:

> The answer in short is yes, the jury is free to consider all the evidence presented to you during the course of this trial for any reason you believe it to be appropriate to be considered, as long as it's consistent with this Court's instructions of law.
>
> That includes if evidence was received or admitted for a limited purpose, you may only consider it for the limited purpose as this Court instructed. But otherwise, you may consider all of the evidence that was presented consistent with this Court's instructions.

> I do hope that was helpful and responsive to your question. With that, I will ask you to return to your jury room. Thank you all very much.

Id. at 434:5-20.

After the jury returned to its deliberations, counsel indicated to the Court that they had a question. The Court returned on the record, and Defendant's counsel at that time informed the Court that they believed the Court's answer to the jury's question was incorrect. See id. at 435-43. After discussion, the Court informed the attorneys that it believed that it accurately and appropriately answered the question and referred the jury back to the charge. The Court did not call the jury back in to change its answer to the question.

In Counts Two and Three of the Indictment, the Government included both (1) the alleged false statement and (2) the reason why the Government believed the statement to be false. For instance, Count Two alleges that Defendant made a false statement "by denying that any staff in the SHU at USP Hazelton had used excessive force against inmates," and that statement was false "**because**, as WILLIAM LEWIS then and there knew, he had recently reported that SHU staff had, in fact, used excessive force against inmates." (emphasis added). Count Three says that Defendant made a false statement by stating that he "never told anybody" that he

had "seen [SHU] officers going too far" and that the statement was false "**because**, as WILLIAM LEWIS then and there knew, he advised a SIS Lieutenant that staff in the SHU at USP Hazelton were assaulting inmates and might ultimately kill an inmate." (emphasis added).

Defendant alleges now that the Government "must prove the [disputed] statement is untruthful for the reason alleged in the indictment." Importantly, despite the "because" language contained in Counts Two and Three, the Court's jury instructions did not instruct the jury to consider only the reasons alleged in the Indictment. Even if Defendant's legal argument here is correct, his objection is untimely on multiple levels. When the Court received the jury's question, the Court read it aloud to counsel. Counsel had an opportunity to object to the Court's proposed answer and/or propose their own answer. Counsel did not object and did not propose an answer. The Court proceeded to bring in the jury, answer its question, and send the jury back to continue deliberating. Only after all of this did counsel object to the Court's answer. Not only is Defendant's objection untimely as it relates to the jury question, but it was also untimely with respect to the jury charge. Defendant is essentially asking the Court to revise the jury charge, which had already been discussed at length and was never objected to on this ground.

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 84]**

As the Government points out, it was proper to instruct the jury that it could consider the full context of the alleged false statements. See United States v. Manapat, 928 F.2d 1097, 1101 (11th Cir. 1991) ("Several courts have stated that '[a] defense to a charge of perjury may not be established by isolating a statement from context, giving it in this manner a meaning entirely different from that which it has when the testimony is considered as a whole.").

Defendant's objection to the Court's answer was untimely. Further, the Court's answer was an accurate statement of the law and was not confusing or misleading. For all of these reasons, the Court was not in error when it responded to the jury's question.

### 3. Defendant waived his multiplicity challenge by failing to raise it before trial.

Defendant argues that the three counts in the Indictment are multiplicitous because they charge three counts for a single offense, resulting in three penalties for one crime.[1] He argues that Counts Two and Three emanate from identical questions posed to Defendant, to which Defendant provided identical answers.

"Multiplicity is the charging of a single offense in several counts.  The Fifth Amendment's Double Jeopardy Clause prohibits

---

[1] Again, Defendant was acquitted as to Count One.

13

multiplicitous indictment for crimes that are in law and in fact the same offense." United States v. Fall, 955 F.3d 363, 373 (4th Cir. 2020) (citations and quotations omitted), cert. denied, 141 S. Ct. 310 (2020). False statement charges are only multiplicitous if a "declarant was asked the same question and gave the same answer." United States v. Jameson, 972 F.2d 343, at *10 (4th Cir. 1992) (unpublished) (citation omitted).

Under Rule 12(b)(3)(B)(ii) of the Federal Rules of Criminal Procedure, a multiplicity defense "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." If a defendant fails to show good cause for failing to raise the issue before trial, the defense is waived. See United States v. Cabrera-Beltran, 660 F.3d 742, 753 (4th Cir. 2011); see also United States v. Price, 763 F.2d 640, 643 (4th Cir. 1985) (applying waiver rule to multiplicity and duplicity challenges where a defendant failed to raise the issues prior to trial). Here, Defendant did not raise the multiplicity defense before trial and has failed to show good cause. Thus, the defense has been waived.

### V.   CONCLUSION

For the reasons discussed above, Defendant's post-trial motions are **DENIED** [ECF No. 84].

It is so **ORDERED**.

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 84]**

The Clerk is directed to transmit copies of this Order to counsel of record.

DATED: September 25, 2023

*Tom S Kleeh*
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA